STATE ex Rel. O'HERN, Relator, *v.* LOUD, Respondent.

(No. 7,012.)

(Submitted June 14, 1932. Decided July 9, 1932.)

[14 Pac. (2d) 432.]

*Mr. Daniel L. O'Hern,* Relator, *pro se,* submitted a brief and argued the cause orally.

*Messrs. Loud & Choate,* for Respondent, submitted a brief; *Mr. I. W. Choate* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is a *quo warranto* proceeding to try title to the office of city attorney of Miles City. At the regular city election held in April of this year a mayor and four aldermen were elected. At the first regular meeting of the council, the newly

elected mayor and all aldermen being present, the mayor nominated C. H. Loud, a former district judge, for the position of city attorney, and upon roll-call the vote was four for confirmation and four against. The mayor, believing he had the right to break the tie, voted in favor of his nominee. The members of the council voting against Judge Loud's confirmation denied the mayor's right to vote. To test the validity of the mayor's action Daniel L. O'Hern, also a former district judge, who for some years prior to the meeting had occupied the position of city attorney, brought this proceeding claiming that it was his duty to hold over as city attorney and challenging the right of Judge Loud to hold the office. Matters of great importance to Miles City, which require the immediate attention of a duly appointed city attorney, inclined us to take original jurisdiction.

The sole question is whether the mayor had the right to cast ██ ██ the decisive vote on the question of confirming his own appointee. The case is one turning upon statutory construction, and we proceed at once to determine the effect of sections 5031 and 5054, Revised Codes 1921. The first reads: "The mayor is the presiding officer of the council, must sign the journals thereof and all warrants of the city treasurer, and decide by his vote all ties, and has no other vote." (Sec. 5031.) The second reads: "The ayes and noes must be called and recorded on the final passage of any ordinance, by-law, or resolution, or making any contract, and the voting on the election or appointment of any officer must be viva voce, and a majority of the whole number of the members elected is requisite to appoint or elect an officer, and such vote must be recorded." (Sec. 5054.)

This court was confronted with a similar situation in *State ex rel. Young* v. *Yates,* 19 Mont. 239, 37 L. R. A. 205, 47 Pac. 1004, which arose over the right of the mayor of Great Falls to cast the deciding vote for the confirmation of his appointee, the city jailer, where the vote of the council was four to four. The applicability of this case to the present problem is relied upon by both parties to this lawsuit and it seems to be tacitly

agreed that the present case will turn, to a considerable extent, on the proper application of the decision in that case to the facts in this.

When the *Young Case* was decided section 367, page 698, of the Compiled Statutes of 1887, provided that the mayor should be the chief executive officer of the city, cause all ordinances to be faithfully executed, preside at all meetings of the city council, and "in case of tie in any vote or proceeding of the city council he shall have the casting vote, and not otherwise." Other duties and powers of the mayor are prescribed in section 367, which it is not necessary to mention here. Section 347 of the Compiled Statutes of 1887, as amended by the third legislative assembly (Laws of 1893, p. 123) read as follows: "In making or awarding contracts by the city council or corporate authorities the ayes and noes shall be called and recorded. It shall require a majority vote of all the members constituting the council to make or award a contract or to appoint, elect and confirm city officers."

Section 385 provided that "corporate authority of cities shall be vested in the mayor and in a board of aldermen, to be denominated the city council, and in such other officers as are herein mentioned or authorized to be elected or appointed by the city council."

Sections 347, 367 and 385, supra, were considered in the *Young Case,* and if they had been continued without amendment there is no doubt that authority would be deemed controlling in this case. As has been seen, section 5031 contains in substance the authority of the mayor to vote "in case of tie," as it is stated in section 367, but in stronger language: he "must  *  *  *  decide by his vote all ties." Section 347, supra, with some changes, appears now as section 5054, Revised Codes 1921, which we shall refer to later.

Section 385, supra, has disappeared. Hence it is argued that the mayor is not "a part of the council," as he was said to be in the *Young Case.* Furthermore, says relator, under the Codes the powers of cities are distributed into legislative, executive and judicial, the legislative power being vested in the

council, the executive power in the mayor and his subordinate officers, and the judicial power in a police court. (Sec. 4956, Rev. Codes 1921.) But upon comparing the statutes of 1887, referred to above, with sections 5030, 5031, 5054 and 5056, of the Revised Codes of 1921, we are satisfied that, generally speaking, the corporate authority of a city, existing under the form employed by Miles City, is vested in a mayor and in a board of aldermen (and perhaps other officers) as it was in 1887.

In the sense employed in the *Young Case* it may still be said that the mayor is "a part of the city council." Strictly speaking he is not a member of the council in the sense that an alderman is. The mayor is the presiding officer of the council. He has the power, *inter alia*, "to nominate, and, with the consent of the council, to appoint all non-elective officers of the city or town, provided for by the council, except as provided in this title." (Sec. 5030, subd. 1.) He has power to approve all ordinances and resolutions of the council, and has extensive veto powers. (Sec. 5030.) He is a member of the council *sub modo* at least, "to the extent of the power specially committed to him." (2 Dillon on Municipal Corporations, sec. 513.)

We do not see that the omission of section 385 of the Laws of 1887, above referred to, lessens the applicability of the *Young Case* to the conditions presented here. Construing sections 5030, 5031 and 5054, Revised Codes 1921, together, "we cannot assent to the proposition that the city council is composed exclusively of the aldermen and that they may ignore the mayor or deprive him of his right to preside, sit or vote therein in case of a tie. The relations of the mayor towards the body of the council, the board of aldermen, are controlled by law. He has certain duties, rights and powers granted to him of an executive nature, yet he presides over and is a constituent part of the whole council exercising its legislative powers, but withal he has no right to vote except where the body over which he presides, the board of aldermen, tie in a vote or proceeding. A nomination to an office which requires confirmation by the members of the council, before becoming

effective, necessarily demands a vote of the members constituting the city council who can vote. But, inasmuch as the mayor cannot vote unless there is a tie, the right to vote is necessarily restricted to the aldermen until that condition arises, when, by reason of a tie vote, the mayor may exercise his power, and confirm or reject." (*State ex rel. Young* v. *Yates*, supra.) Other language in that case is directly applicable to the conditions presented here. We think the case is as applicable to the present case as to the one for which it was written.

Section 347, as amended by the third session laws, contained the provision that "it shall require a majority vote of all the members constituting the council to make or award a contract or to appoint, elect or confirm city officers," when the *Young Case* was decided.

It is pointed out in the brief of respondent that a study of the history of section 5054 plainly discloses that section 347, as amended in 1893, was carried over into the Codes without regard to the reason back of the original enactment and without consideration of the question whether or not that reason still existed. When the 1893 amendment was adopted the council elected and appointed certain city officers; but when the section came into the 1895 Codes the council no longer appointed or elected officers, with the exception of filling vacancies in elective offices (sec. 5015, Rev. Codes 1921). In *State ex rel. Wilson* v. *Willis*, 47 Mont. 548, 133 Pac. 962, relied upon by relator, this court correctly held that section 3236, Revised Codes 1907, now section 5015, Revised Codes 1921, rather than section 3263, Revised Codes 1907, now section 5054, Revised Codes 1921, was applicable to the case of an election by the city council to fill the vacancy in its body caused by the resignation or death of an elective officer. But section 5015, Revised Codes 1921, does not have any application to a situation such as is presented in the instant case, and by reason of the difference in the facts we fail to see the applicability of *State ex rel. Wilson* v. *Willis* to the present problem. Since the Codes have come into effect the appointive officers of a city are named by the mayor, by and with the

advice of the council. All that the council may do is to give or refuse its consent to the mayor's appointments. Under such circumstances the provisions of section 5031 operate with controlling force.

In discussing the question of the power of the mayor to vote as a member of the council when it is expressly provided by statute that he shall be the presiding officer and shall have a deciding vote in case of a tie, Judge Dillon says: "When a tie exists the right of the mayor to give a casting vote is not affected by the fact that the question before the council involves the approval or disapproval of some action on his part as mayor. In case of a tie he may vote, although it be on a motion to confirm an appointment made by him. The mere fact that the appointment is made by him does not deprive him of his vote in the absence of statutory language excluding it." (2 Dillon on Municipal Corporations, supra; *Hecht* v. *Coale*, 93 Md. 692, 49 Atl. 660; *McCourt* v. *Beam*, 42 Or. 41, 69 Pac. 990; *State* v. *Pinkerman*, 63 Conn. 176, 22 L. R. A. 653, 28 Atl. 110.)

If the words "a majority of the whole number of the members elected is requisite to appoint or elect an officer" were unrestricted by any other provision, still there is found respectable authority to the effect that when there is a tie the mayor may cast the deciding vote. (*Carrollton* v. *Clark*, 21 Ill. App. 74; *Village of Hazelcrest* v. *Lambert*, 343 Ill. 105, 174 N. E. 868; *Mound City* v. *Shields*, 220 Mo. App. 798, 278 S. W. 798, 799; 7 R. C. L. Supp., p. 4733.)

We come, therefore, to the conclusion that the mayor had the right to break the tie, and Judge Loud is the duly appointed city attorney of Miles City. The proceeding is dismissed.

ASSOCIATE JUSTICES ANGSTMAN and MATTHEWS, HONORABLE W. H. MEIGS and HONORABLE LYMAN H. BENNETT, District Judges, sitting, respectively, in place of JUSTICES GALEN and FORD, disqualified, concur.

Rehearing denied October 3, 1932.