R. E. DOONAN, Appellee, v. CITY OF WINTERSET, Appellant.

No. 43978.

OCTOBER 26, 1937.

Percival & Wilkinson, for appellee.

Daniel J. Gallery, for appellant.

PARSONS, J.—This is an action against the City of Winterset brought to recover damages on an alleged contract of employment. The City of Winterset is a city of the second class, with a council and mayor, the council consisting of four members. The City of Winterset is the owner of an electric light and power plant.

Prior to the election in March, 1935, the four members of the council were M. R. Hassell, Oliver James, Pat Cline and F. O. Richards, and George M. Pratt was mayor of said city, until April 1, 1935, according to the law of the city ordinances. On March 25, 1935, a city election was held, and as a result of

same all of the members of the council were retired, except Pat Cline; the members being elected were Carleton Peters, R. C. Dunn, Clyde Wilkinson and the hold-over Pat Cline; and Martin S. Logan was elected mayor for the two years beginning April 1, 1935.

On the 15th of February, 1935, there was a proposal before the council then existing to employ one R. E. Doonan as superintendent of the Electric Light & Power Company, for the period commencing March 1, 1935, and continuing to April 1, 1937, compensation to be $135 per month, payable monthly at the end of each month. This proposal came up before the members of the council in the form of a resolution to enter into a contract of employment, and the clerk's record shows that on roll call Councilmen Hassell and James voted "Yes", and Cline and Richards voted "No", and then the record says, "after the said Council voted it was found that the vote was a tie. This being the case, the Mayor cast the deciding vote 'Yes', thus causing the motion to carry. Passed and adopted this 15th day of February, 1935. Approved by me this 15th day of February, 1935. (Signed) Geo. M. Pratt, Mayor of Winterset, Ia."

A contract employing Doonan from March 1, 1935, to April 1, 1937, was then made in accordance with the resolution, and same was signed by the City of Winterset, Iowa, by Geo. M. Pratt, Mayor of Winterset, Iowa, and attested by the city clerk, as parties of the first part, and by R. E. Doonan, party of the second part. Doonan entered upon the discharge of his duties under said contract March 1, 1935.

At the first meeting of the new council a resolution was introduced reciting the actions of the previous council and mayor, and terminating the employment of Doonan, and providing for notice to be given to Doonan by serving copy of the resolution upon him. Upon roll call the members of the city council all voted "Yes" on the resolution, whereupon notice was duly given to Doonan, who was ejected from the position by the mayor and marshal.

The plaintiff began suit, and in his petition and amendment thereto he alleged he was entitled to receive $135 per month, payable monthly at the end of the month, and that the contract was to begin March 1, 1935, and extend to April 1, 1937; he stated and alleged that the court should maintain jurisdiction of this action until April 1, 1937; and, as his damages accrued,

the court was to determine the amount thereof and enter judgment accordingly.

Plaintiff subsequently filed a second amendment to his petition in which he alleged that in violation of the terms of the contract declared upon in his petition, and without any fault on his part the defendant unlawfully discharged plaintiff April 1, 1935, and prevented him from performing any of the labor or employment specified in the terms of said contract; that he was unable to secure employment of a similar character until May 22, 1935, and that by reason thereof defendant was indebted to him in the sum of $235, under the terms of the contract; and further stated that for the purpose of minimizing the damage he sustained by reason of defendant's unlawful breach of contract he attempted to secure employment, and in so doing he incurred expense of $100, no part of which had been paid; wherefore he prayed for judgment against the defendant in the sum of $335, with costs.

The answer of defendant, City of Winterset, set up various defenses, principally that the city had no right to enter into the contract under the laws as they stood, and that the mayor had no right to vote upon the resolution, and that the resolution to enter into the contract was never adopted by a majority of the whole number of members elected to the city council, and hence was void and of no force and effect; that on February 15, 1935, the City of Winterset had no power to enter into a contract with Doonan for any period of time subsequent to April 1, 1935, because the terms of the mayor and councilmen expired April 1, 1935, and said city council and mayor could not legally bind the City of Winterset on said purported contract beyond the period of the term of office of said mayor and councilmen, and by reason thereof the contract was void and of no force and effect; that the purported contract attempts to bind the City of Winterset for a period of time longer than two years, in violation of the provisions of subsection 9 of section 5663 of the Code of Iowa, and was therefore void and unenforceable; that by renunciation of said purported contract by the City of Winterset, it refused to recognize any purported rights of said contract, and officially declared said contract null and void, and so notified the plaintiff Doonan.

In Division IV of the answer the city set forth that the plaintiff threatened defendant with a multiplicity of suits, and

asked that the case be transferred to the equity docket; the case was submitted to the court and it ordered judgment entered for plaintiff in the sum of $295.35 with interest at five per cent from May 22, 1935, and costs of the action.

There were various questions raised, motions attacking pleadings, and objections to testimony, which, so far as we deem necessary, will be noticed further in the opinion.

It is evident from this record that the first thing to pass upon is the claimed contract between the plaintiff and the City of Winterset. The only right we see from the record, if it is a right, is that the resolution to enter into the contract when voted upon had two votes cast in favor of it and two against it, and the mayor voted for the resolution and declared it carried.

So this raises the question under our statutes as to the right and power of the city to enter into the contract, under the proceedings set forth herein.

There is perhaps no use examining this question back of the Code of 1924, for the reason that the question of legality of a contract and the entering into same by the city must be settled by the provisions as they appear in these Codes.

Section 5717 of the Code of 1935 appears in identical form and language as in the Code of 1924. The extra session of the Fortieth General Assembly resulted in the Code of 1924, and among the bills passed was House File 156 which provided in section 2 thereof as follows:

"No resolution or ordinance for any of the purposes hereinafter set forth, except as specifically provided by law, shall be adopted without a concurrence of a majority of the whole number of members elected to the council, by call of the yeas and nays which shall be recorded:

"1. To pass or adopt any by-law or ordinance.

"2. To pass or adopt any resolution or order to enter into a contract."

The balance of the act does not bear upon the questions involved in this case.

Section 5639 of the Code of 1935 provides, among other things, in cities and towns the mayor shall have power and perform duties as follows:

"5. Presiding officer—vote. He shall be the presiding officer of the council with the right to vote only in case of a tie."

So that in the case of a tie the mayor has the right to vote.

The question then arises, from the language used in section 5717,—Does the mayor have a right to vote upon the passage of an ordinance or resolution to make a contract? What is the meaning of the language, "A concurrence of a majority of the whole number of members elected to the council"? The mayor is not a member of the council. The section provides that "no resolution or ordinance for any of the purposes hereinafter set forth, except as specifically provided by law, shall be adopted without a concurrence of a majority of the whole number of members elected to the council." Only four men were elected to that council, in one sense of the word. The mayor was simply the presiding officer; he is not a member of the council.

Then the question arises, Can an ordinance be adopted, or can a contract be entered into, when the council vote is two and two, and the mayor votes for the passage? Is there a majority of the whole number of the members elected to the council?

This has never received any construction in this state, that we know of. The mayor's power to vote leaves it somewhat uncertain. He shall be the presiding officer of the council. It does not say on what he shall vote. We are confronted here by the provisions of section 5717, with the requirement of a "majority of the whole number elected to the council". The legislature has made it somewhat in doubt as to just what should be said upon this subject. If he were a member of the council there would be no question; he is not a member of the council, however, but the presiding officer of the council, and this is the record and the statutes upon which we have to decide this question.

A majority of the council can pass a resolution. Can one not a member of the council, not elected to the council, vote on this question then, if there be a tie? Is it reasonable to say that a vote on any of the resolutions or matters coming within the province of section 5717, can be made by the mayor to break a tie vote? Can he do so in face of the language of the statute requiring a "concurrence of a majority of the whole number of members elected to the council"?

It will be observed that the wording of the statute is made to fit just such a case as this. What is meant by "No resolution or ordinance for any of the purposes hereinafter set forth, except as *specifically* provided by law, shall be adopted without a

concurrence of the majority of the whole number of members elected to the council''? (Italics ours.)

■■■ True, subsection 5 of section 5639 of the Code says, as to the mayor, ''He shall be the presiding office of the council with the right to vote only in case of a tie.'' Is that a specific provision such as is required to authorize him to vote on the passage of an ordinance or resolution entering into a contract, when the language of the statute providing therefor requires that it shall be by the ''concurrence of the majority of the number of members elected to the council''? We think the answer to this proposition must be ''No'', and we therefore think the mayor in this case had no right to vote with the two members of the council who voted ''Yes'', and thus enter into the contract.

State v. Noth, 173 Iowa 1, 151 N. W. 822, 152 N. W. 639, was an action to test defendant's right to the office of councilman of the City of Davenport, which resulted in a judgment ousting him. An appeal was taken to this court. The city was divided into six wards, the council consisted of a mayor, two aldermen at large, and an alderman from each ward, thus consisting of nine members. The alderman from the sixth ward died. The council met to fill the vacancy occasioned thereby; seven aldermen and the mayor were present. There were two candidates for the place. Four aldermen voted for Noth and three for Howard, and the mayor ruled that, as a majority of the members of the council had not voted for either, there was no election. An appeal was taken from the ruling, whereupon three aldermen voted to sustain and four to the contrary, and the mayor held that the council had not voted to reverse his ruling. Noth then qualified by taking the oath of office before the clerk, who issued him a certificate of election.

In commenting upon this the court, speaking through Judge Ladd, said:

''Vacancies in the office of alderman shall be filled by the remaining members of the council of said city. The vacancy shall be filled within 30 days after the same has occurred, at a regular or special meeting, and a majority vote of the remaining members of the city council shall be necessary to fill the same.'' And hence, it was held that there was no election.

The mayor may vote in ordinary business affairs of the

city, casting his vote to break a tie, but that is far from giving him the right to vote on matters covered by section 5717.

In these conclusions, as to this branch of the case, we feel that we are supported by State ex rel. Grosshans v. Gray, 23 Neb. 365, 36 N. W. 577, a Nebraska case, under a statute very similar to ours, and we find no authority to the contrary as to the conclusions reached.

The case was tried to the court, whether at law or in equity it does not appear, and a judgment was entered for the plaintiff in the amount of $295.35, with interest at 5% from May 22, 1935. And the case comes to us on appeal.

There were several motions made by the plaintiff to strike certain parts of the answer of defendant, and these matters were sustained by the court. However, the pleadings and facts showed that the plaintiff relied on a contract claimed to have been made with the city, and that even without the parts of the answer stricken by the court, and on the facts introduced, it was shown that the contract was made only by the resolution to enter into it, and that a majority of the members elected to the council did not vote for the resolution. True, the defendant appealed to the Supreme Court on the ruling to strike portions of the pleadings, but that appeal was dismissed by defendant, and no trial was had thereon. The appeal was dismissed on July 16, 1936, and a procedendo dated the same day was filed with the clerk July 24, 1936. This left the case for trial in the district court.

■■■ Granting that the order striking portions of defendant's answer was appealable, this left the case as though no appeal had been taken. If the order striking was appealable, which matter we do not determine, it inhered in the judgment, and an appeal from that permitted the appellant to present the matter here.

The notice of appeal taken after entry of judgment was dated January 25, 1937, very shortly after entry of judgment, and was from each and every adverse ruling and order in said cause, and was filed in the office of the clerk of Madison County, Iowa, January 25, 1937.

■■■ The dismissal of an appeal does not preclude the right to again appeal within the statutory time. Snyder v. Richey, 150 Iowa 737, 739, 130 N. W. 922; Stutsman v. Sharpless, 125

Iowa 335, 101 N. W. 105; Groendyke v. Musgrave, 123 Iowa 535, 99 N. W. 144.

██ This case illustrates what was said in Peterson v. City of Panora, Iowa, in 222 Iowa 1236, 271 N. W. 317, a case written by the writer of this opinion, and concurred in by the entire court. The opinion says:

"It is fundamental under the decisions of this state, that one who attempts to contract with a municipal corporation is bound to take notice of the limitation of the power of the particular officers or agent to make such contract; and one who deals with a municipal corporation under such circumstances, deals at his peril."·

Hence, on the whole case, we conclude that the plaintiff, appellee, having claimed under a contract with the city, which contract required certain proceedings to be taken by the city before it could be entered into, to wit: "a concurrence of a majority of the whole number of members elected to the council"; and the record showing that these proceedings were not taken by the city, the court was in error in entering judgment against the city on the claimed contract, and for the reasons hereinbefore set forth, this case is reversed and remanded with instructions to enter judgment for·the defendant and against the plaintiff.— Reversed and remanded.

HAMILTON, C. J., and STIGER, SAGER, ANDERSON, DONEGAN, and KINTZINGER, JJ., concur.

MITCHELL, J., dissents.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority and therefore respectfully dissent.

The problem which confronts us is the construction of certain statutes which have not been passed upon before by this court and upon which there is not a great deal of authority in other jurisdictions.

The majority quote the case of State v. Noth, 173 Iowa 1, at page 3, 151 N. W. 822, 152 N. W. 639, but in my judgment that case is not in point and is of no help in solving the question before us for the court in that case said:

"Whether the mayor shall vote or not is entirely immaterial

in determining the number requisite to election; and for this reason, the section of the special charter of the city saying, 'The mayor shall have the casting vote and no other', is not pertinent, and whether he might properly have voted is not involved.''

The material part of section 5717 of the 1935 Code reads as follows:

''No resolution or ordinance for any of the purposes hereinafter set forth, except as specifically provided by law, shall be adopted without a concurrence of a majority of the whole number of members elected to the council, by call of the yeas and nays which shall be recorded.''

The material part of section 5639 of the 1935 Code is as follows:

''5. Presiding officer—vote. He shall be the presiding officer of the council with the right to vote only in case of a tie.''

In the case at bar there was a tie—two voted for and two against. The mayor then voted to break the tie. The question is, Did he have a right to vote? The majority opinion holds that he did not.

It must be noted that there is no limitation placed upon the right of the mayor to vote in case of a tie. Nowhere in the statute is it provided that he may vote in certain cases and not in others. The provision is simply that ''if there is a tie he has a right to vote.''

In the case of State ex rel. O'Hern v. Loud, 92 Mont. 307, 14 Pac. (2d) 432, a very similar question was before the Supreme Court of the State of Montana. In that case the question had to do with the confirmation of an appointment to the position of city attorney by the mayor, which seems to me to go just a little further than the case at bar. There was a tie. Did the mayor have a right to cast his vote to confirm the appointment that he himself had made? The court, 92 Mont. 307, 14 Pac. (2d) 432, at page 433, said:

''The relations of the mayor towards the body of the council, the board of aldermen are controlled by law. He has certain duties, rights, and powers granted to him of an executive nature, yet he presides over and is a constituent part of the whole coun-

cil exercising its legislative powers, but withal he has no right to vote except where the body over which he presides, the board of aldermen, tie in a vote or proceeding. * * * A nomination to an office which requires confirmation by the members of the council, before becoming effective, necessarily demands a vote of the members constituting the city council who can vote. But, inasmuch as the mayor cannot vote unless there is a tie, the right to vote is necessarily restricted to the aldermen until that condition arises, when, by reason of a tie-vote, the mayor may exercise his power, and confirm or reject.''

And a little later in the same opinion, 92 Mont. 307, 14 Pac. (2d) 432, at page 434, that court said:

''If the words 'a majority of the whole number of the members elected is requisite to appoint or elect an officer' where unrestricted by any other provision, still there is found respectable authority to the effect that, when there is a tie, the mayor may cast the deciding vote. Carrollton v. Clark, 21 Ill. App. 74; Village of Hazelcrest v. Lambert, 343 Ill. 105, 174 N. E. 868; Mount City v. Shields, 220 Mo. App. 798, 278 S. W. 798, 799; 7 R. C. L. Supp., p. 4733.''

In Judge Dillon's work on Municipal Corporations, (5th Ed.) §513, p. 834, that learned authority said at page 835:

''His functions are intended to be, and usually are, of an executive or administrative character, and whatever power he may at any time exercise in the legislative functions of a municipal government is never to be implied, but must find its authority in some positive statute. In this view, in the absence of a statute necessarily implying that he has the same standing in the council as any other member, and particularly when his powers are expressly stated to be to preside at meetings and to give a casting vote in case of a tie, he is only a member of the council *sub modo*, and to the extent of the power specially committed to him * * *.''

And at page 837 we read: ''By providing that he shall have a casting vote, it is implied that he shall have no other vote. When a *tie exists*, the right of the mayor to give a casting vote is not affected by the fact that the question before the council involves the approval or disapproval of some action on his part

as mayor. In case of a tie he may vote, although it be on a motion to confirm an appointment made by him. * * *''

The Legislature of Iowa gave to the mayor of the City of Winterset, and cities of that class, the right to vote in case there was a tie. He was a member of the city council for the purpose of presiding and casting a vote in case of a tie, even tho not a member for any other purpose. It is a rule of parliamentary procedure that the presiding officer—although he may not be a member of the body over which he is presiding—has a right in case of a tie to cast his vote. That rule applies even in the Senate of the United States, where the Vice President may vote in case of a tie. I appreciate that there are rules of procedure governing various bodies, including the Senate of the United States, and that we are here confronted with the construction of a statute, but, it seems to me that the procedure commonly used in parliamentary bodies, that a presiding officer has a right to cast his vote in case of a tie, points the way to what the Legislature meant when it enacted the statute before us. There should be some way to determine tie votes. A city council might, by a tie, have deadlocked some important matters. The mayor, the presiding officer, is in a position to cast his vote, and when the Legislature said as it did, that the mayor has a right to cast his vote in case of a tie, and there was no limitation placed upon it, I think that meant in case of any tie, and that the mayor of the City of Winterset had a right to vote.

I would affirm the decision of the lower court.